Filed 2/28/14  P. v. Ferrer CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H039169 |
| Plaintiff and Respondent, | (Santa Cruz County Super. Ct. No. F21206) |
| v. | |
| EDGAR ISMAEL FERRER, | |
| Defendant and Appellant. | |

A jury convicted defendant Edgar Ismael Ferrer of possessing heroin for sale. (Health & Saf. Code, § 11351.)  The conviction followed defendant's arrest after a probation search in which sheriff's deputies discovered illegal drugs on him.  He was sentenced to a term of six years, consisting of two years in county jail followed by four years of formal probation pursuant to the Criminal Justice Realignment Act of 2011. (Pen. Code, § 1170, subd. (h).)

On appeal, defendant claims (1) he received ineffective assistance when his counsel failed to pursue a motion to set aside the information based upon allegedly improper strip-search techniques that led to incriminating evidence, (2) the trial court erred in admitting into evidence the content of certain text messages, and (3) the court erred in calculating his presentence conduct credit.

We will remand the case to the trial court for reassessment of defendant's eligibility for presentence conduct credit, but in all other respects we will affirm the judgment.

## PROCEDURAL HISTORY

A jury convicted defendant of possessing heroin for sale. (Health & Saf. Code, § 11351.) In a bench trial that followed, the trial court found true a sentence-enhancement allegation that defendant had a prior conviction for transporting drugs. (*Id*., § 11370.2, subd. (a).)

## FACTS

Prior to his arrest in this case, defendant was on probation for a drug-related misdemeanor conviction and was subject to a warrantless search provision. At trial, the jury heard the following evidence:

Two Santa Cruz County Sheriff's deputies went to a Santa Cruz apartment to locate an individual named Vanessa Randall. After another person let the deputies into the apartment, one deputy knocked on a bedroom door. Defendant opened the door slightly and peered through the opening. At least one of the deputies knew that defendant had a criminal history. The deputy told defendant to open the door, and he complied.

The deputy noticed that defendant appeared to be intoxicated. The deputy asked defendant about recent drug use, and defendant said he had recently used methadone. The deputy then looked at text messages on an iPhone that had been lying on the bed. He thought they showed that defendant had been negotiating drug sales.

A search of the bedroom yielded a pair of gardening shears with a brown residue that looked and smelled like heroin. Underneath the bed was a purse containing 10 to 15 used syringes. A wallet on the bed contained $329. A backpack on the floor contained a scale possibly contaminated with heroin residue. A plastic shopping bag had been cut so that most of it was missing. The deputies thought this was significant because drug

2

dealers are known to package narcotics in pieces of plastic cut from bags they then tie off or heat-seal.

Based on the text messages and the other items found in the room, the deputies decided to strip-search defendant. The deputies, who like defendant were male, wanted to afford defendant privacy. As one would later testify, "it's a very uncomfortable situation for me and the person" being strip-searched. They closed the bedroom door and window blinds. They did not touch defendant at any point. After defendant had undressed himself, a golf-ball-sized plastic object slipped out of a hiding place between defendant's buttocks, into plain view. One of the deputies plucked the object from between defendant's buttocks and opened it. It contained interior packages that appeared to hold heroin, cocaine, and methadone. On this discovery, defendant volunteered, "This is going to hurt." Forensic examination later revealed that the retrieved heroin weighed 5.08 grams. After being arrested, defendant tested positive for opiates—which could include methadone or heroin—and cocaine.

One of the deputies, qualified as an expert, testified that in his opinion defendant possessed the heroin so he could sell it.

## DISCUSSION

I.    *Motion to Set Aside the Information; Ineffective Assistance of Counsel*

Defendant claims that his constitutional right to the effective assistance of counsel was infringed upon because his counsel failed to obtain a hearing on a motion to set aside the information that had previously been filed. The written motion had rested on the ground that the strip-search was unlawful.

A.    *Background*

After a felony complaint was filed, defendant moved to suppress the evidence of the drugs pursuant to section 1538.5 of the Penal Code on the ground that "The search and seizure of Mr. Ferrer was unlawful as it was more intrusive than necessary." The motion was heard before a magistrate in conjunction with the preliminary hearing. At

3

that hearing, one of the deputies related the facts that the jury would later hear, as described above. The deputy also testified that the strip-search took about 20 seconds. As the jury would later come to understand, the deputy explained during the preliminary hearing that the strip-search did not involve any direct physical contact with defendant.

Counsel argued that the evidence should be suppressed because "the intrusion here was significant considering that Mr. Ferrer is on misdemeanor search terms." The magistrate disagreed, saying, "I don't think that the distinction whether he is on misdemeanor conditional sentence or a parolee rises to the level of unreasonable search in this case." Defendant's status was "still probation" and "the Court doesn't see it as a distinction with a difference." Also, the deputy's testimony "described how they took pains to shut the room, close it down, lock it and make it very un-intrusive." "So," the magistrate concluded, the court "does not find this to be [an] unreasonable search that shocked the conscious [*sic*] or invaded the defendant's privacy unduly." The magistrate denied the motion to suppress.

After defendant was held to answer he filed a new motion in the trial court, based upon the same ground as the prior motion to suppress, except defendant's new motion was a motion to set aside the information pursuant to Penal Code section 995. The prosecution replied, "defendant's re-arguments of [his] original motion to suppress are in direct contravention [of] binding factual findings made by the original reviewing magistrate."

Defendant failed to appear for the hearing on the motion to set aside the information. The trial court ordered his bail bond forfeited and relieved his appointed counsel. Five months later, however, defendant once again appeared in court and the trial court appointed new counsel for him.

Respondent agrees that defendant's new counsel did not pursue the motion to set aside the information.

4

B.     *Analysis*

Under the Sixth Amendment to the United States Constitution, a criminal defendant has the right to the effective assistance of counsel.  (*People v. Ledesma* (1987) 43 Cal.3d 171, 215.)  "The ultimate purpose of this right is to protect the defendant's fundamental right to a trial that is both fair in its conduct and reliable in its result." (*Ibid.*)  A claim of ineffective assistance of counsel in violation of the Sixth Amendment entails deficient performance under an objective standard of professional reasonableness as well as an analysis of prejudice under a test of reasonable probability that there was an adverse effect on the outcome of the case.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 694.)

" ' "Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " [Citation.]  "[W]e accord great deference to counsel's tactical decisions" [citation], and we have explained that "courts should not second-guess reasonable, if difficult, tactical decisions in the harsh light of hindsight" [citation].  "Tactical errors are generally not deemed reversible, and counsel's decisionmaking must be evaluated in the context of the available facts."  [Citation.]' " (*People v. Stanley* (2006) 39 Cal.4th 913, 954.)

As the foregoing quotation indicates, reviewing courts defer to reasonable tactical and strategic decisions, but not to inexplicable actions that result in adverse outcomes for defendants.  Trial counsel's failure to pursue the motion to set aside the information here, however, was not inexplicable.  The new motion's gravamen was that the deputies' conduct constituted such an "extreme measure" that for purposes of constitutional validity it was shocking to society's conscience.  The reason the conduct was extreme, the new motion contended, was that the deputies conducted "body cavity searches" on defendant.  This language was identical to language in the original written motion to suppress (Pen. Code, § 1538.5) that was heard and denied by the magistrate.  At the

preliminary hearing, held after the motion to suppress was filed but before the motion to set aside the information was written, a deputy testified on cross-examination by defense counsel that there was no body cavity search:

"A. [By the deputy.] . . . [H]e turned away from me and began touching his buttocks with his hands, his fingers, [and] the item slipped down and out[,] exposing itself.

"Q. And he was still handcuffed at this point; correct?"

"A. Correct.

"Q. And at that point, you reached in; correct?

"A. Correct.

"Q. Okay. And you pulled the package out of his anus; correct?

"A. No, not in [*sic*] his anus. His buttocks were closed as he was standing. He was not touching his buttocks and the item fell down low[,] . . . exposing probably [one-] quarter to [one-] half of the item. And at that point[,] without touching his body, I grabbed the package and removed it. So at no point was there anything inside of his body physically in his rectum[,] if that's what you're asking about.

"Q. Yes.

"A. Okay. Ya, nothing. No.

"Q. Okay. How big was the package?

"A. About golf-ball size . . . ."

"[¶] . . . [¶]

"Q. Okay. And did you have a flashlight at all?

"A. No."

Counsel could reasonably have decided that the language in the new motion to set aside the information, which reiterated language in the original motion to suppress, was not supported by the testimony at the preliminary hearing and should not have been

alleged. On this record, then, defendant's claim of ineffective assistance of counsel fails because his counsel's actions were not inexplicable.

II. *Admitting Evidence of the Content of Text Messages; Ineffective Assistance of Counsel*

Defendant also claims the trial court erred under state law in admitting evidence of the content of text messages on his iPhone that suggested he possessed controlled substances for sale. But defendant failed to preserve this claim for review, and his ineffective assistance of counsel claim, presented in the alternative, is unavailing.

A. *Background*

In a pretrial hearing on motions in limine, defense counsel objected to the introduction of any evidence of the content of text messages found on defendant's iPhone. The exchange with the trial court was as follows:

"THE COURT: . . . [Prosecution] Motion in Limine number three, admit text messages. Any objection to that . . .?

"[DEFENSE COUNSEL]: I would object but—

"THE COURT: Any legal basis?

"[DEFENSE COUNSEL]: I'll submit, Your Honor.

"THE COURT: All right. Number three would be granted."

Accordingly, the motion in limine to admit the context of the text messages was granted. At trial, the deputies testified before the jury about the text messages and what they thought they meant. One deputy testified that when he looked at the iPhone, he saw an incoming text message that advised, "I'm almost out." An outgoing message read, "text me when you're all the way out." The deputy testified that he thought the person sending the messages was either selling or transporting drugs for defendant and informing defendant that he was running low.

Another incoming message read, "I'm out. I got people waiting for me at Denny's for 2.5 and 3 GS." The deputy testified that in his view the seller needed between 2.5 and

7

3 grams of controlled substances to sell to waiting customers. Yet another incoming message said, "I owe you 210." Still another said, "PPL are calling with a K, essay. I need rumtin." The deputy testified that in his opinion this message meant, " 'people are calling me,' saying 'I need something.' " Another incoming message said, "Can I please meet up with one of you? I'm getting real sick." The other deputy who participated in the search of the bedroom testified before the jury that heroin addicts become sick from the effects of withdrawal from the drug.

Some messages were from an individual named Saul Alvarado. A deputy replied to Alvarado, pretending to be defendant, and arranged a meeting. Both deputies drove to the meeting place. They found $210 in cash in Alvarado's wallet, separate from $9 contained in another compartment of his wallet.

B.    *Analysis*

As stated, defendant failed to preserve his claim for review. His claim on appeal is that the content of the text messages was inadmissible hearsay (Evid. Code, § 1200) and there was no applicable exception (see *id*., §§ 1201, 1220 et seq.) to the exclusionary rule.

"Although defendant moved to exclude [the evidence], he did not raise this specific ground for exclusion. 'Evidence Code section 353, subdivision (a) requires that an objection to evidence be "timely made and so stated as to make clear the specific ground of the objection or motion. . . ." As we have explained: " 'Specificity is required both to enable the court to make an informed ruling on the . . . objection and to enable the party proffering the evidence to cure the defect in the evidence.' " ' [Citation.] . . . [D]efendant forfeited this issue for appeal." (*People v. Jones* (2013) 57 Cal.4th 899, 977.)

Recognizing that he failed to preserve his claim by failing to lodge a specific objection, defendant argues, "At the hearing on motions *in limine*, the court did not invite argument in opposition and it did not give defense counsel a reasonable opportunity to object. Without permission to argue his specific objection, defense counsel stated simply,

'I would object but . . .' and the court [overruled the objection and] granted the motion . . . ."

" 'The parties must, of course, be given a reasonable opportunity to present any relevant argument and evidence.' " (*People v. Brandão* (2012) 210 Cal.App.4th 568, 572 (*Brandão*).)  In *Brandão*, although counsel did not make a specific objection to the probation condition at issue in that case, it was "not evident that counsel had a chance to fully state the grounds for objection before the court expressed that the subject was closed to further debate.  Under these circumstances . . . [d]efendant preserved his claim for review because his counsel's 'timely objection allow[ed] the court to modify or delete an allegedly unreasonable condition or to explain why it is necessary in the particular case.' " (*Ibid.*)

As *Brandão* instructs, if a trial court effectively prevents defense counsel from making a proper objection that includes an articulated and specific basis for the objection, the question of forfeiture becomes " 'close and difficult' " (*People v. Valdez* (2012) 55 Cal.4th 82, 129, fn. 30), a circumstance that would militate in favor of reviewing the evidentiary claim on the merits (*ibid.*).  But we have reviewed the record of the hearing on the motions in limine in this case and see no evidence that the court did not allow counsel to articulate a basis for objecting to the introduction of the text messages.  To the contrary, upon hearing an objection from defense counsel, the trial court asked if there was "[a]ny legal basis" for the objection.  In response, defense counsel responded, "I'll submit, Your Honor."  Unlike *Brandão*, nothing in this record indicates that defense counsel was precluded in any way from providing a legal basis for the objection.

Defendant argues that if we were to conclude that he forfeited his claim, then he received ineffective assistance based upon his counsel's failure to object to the motion on hearsay grounds.

The United States Supreme Court has said, "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should

9

be followed." (*Strickland v. Washington*, *supra*, 466 U.S. at p. 697.)  That is the best course here, because there is no reasonable probability of a different outcome on the possession-for-sale charge if counsel had successfully objected to admission into evidence of the content of the text messages on the basis of hearsay.  The record contains a number of other items of evidence that point to the commercial nature of defendant's drug-related activities:  the gardening shears with a brown residue that looked and smelled like heroin; the wallet on the bed containing $329, a fairly large sum of cash; the scale possibly contaminated with heroin residue, indicative of commercial activity; and the plastic shopping bag, cut so that most of it was missing, coupled with the testimony that drug dealers use such bags to package narcotics.  Given all of this other evidence that supports defendant's conviction of possessing heroin for sale, it is not reasonably probable there would have been a different outcome in this case had the content of the text messages been excluded.  Defendant's claim of ineffective assistance of counsel therefore fails.

III.    *Calculation of Presentence Conduct Credits*

Defendant also claims that he is entitled to additional presentence conduct credit. The probation report states that defendant earned 101 days of presentence custody credit for actual custody in jail.  The trial court, however, expressly awarded zero days of presentence conduct credit to defendant.  Presentence conduct credit should have been granted under Penal Code section 4019 based upon defendant's time in presentence custody, unless he refused available work while in jail or misbehaved while incarcerated and did not earn any conduct credits (*id*., subds. (b), (c), (d)).  The record of the sentencing hearing provides no explanation for the court's action.

The People, without necessarily conceding error, agree that the record fails to explain why the trial court failed to award any presentence conduct credit to defendant. They suggest that the case be remanded to the trial court to determine defendant's eligibility for such credit.  We agree and will so order in our disposition.

10

DISPOSITION

The case is remanded to the trial court with directions to conduct proceedings to settle the question of whether defendant is entitled to presentence conduct credit, and, if he is entitled to it, to award the credit and issue a corrected Santa Cruz County Superior Court Probation/Conditional Sentence Order and forward the same to the relevant authority or authorities.  In all other respects, the judgment is affirmed.


_____
Márquez, J.



WE CONCUR:




_____
Bamattre-Manoukian, Acting P. J.




_____
Grover, J.

11